IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| v. | * | |
| | * | **Criminal No. PJM 07-549** |
| **JOHN ALVIN ROE** | * | |
| | * | |
| Defendant | * | |

## OPINION

The Court considers Defendant John Alvin Roe's Motion for Judgment of Acquittal as to Count Two of the Indictment, which alleges unlawful possession of a colorable imitation of a badge of the design prescribed by the head of an agency of the United States, in violation of 18 U.S.C. § 701. The Court **GRANTS** Roe's Motion.

I.

On November 9, 2007, United States Park Police in the vicinity of the Baltimore-Washington Parkway received a citizen call from a motorist (actually an undercover Maryland State Trooper traveling in an unmarked vehicle) who reported that a possible police impersonator was attempting to stop the motorist's vehicle, e.g., activating the police-type emergency lights on his vehicle and ordering the motorist by loud-speaker to slow down as the motorist drove down the Parkway. As the police dispatch officer spoke with the caller, one or more officers in the field attempted to locate the alleged impersonator. U.S. Park Police Officer Zielinski subsequently located and stopped the suspect's car, a white Ford Crown Victoria, which belonged to and was driven by Roe. Roe's car, among other things, had the referenced emergency lights as well as a radio scanner, and he was wearing a tactical police-type vest and carrying a semiautomatic hand gun. When Roe got out of his

car and appeared to reach for his weapon, Office Zielinski pulled out his own weapon. At that point, calling out that he was a "federal officer" and "federal police officer," Roe showed Officer Zielinski a gold badge, approximately 2" by 3" in size, bearing the Great Seal of the United States in the center, with the head and wings of an eagle behind the center and American flags draped on the outer edges of the badge beneath the eagle's wings. These rested on what appear to be oak leaves. There was a star at the crest of the badge and in the semi-circular panel directly below it, the initials "NASA" appeared. A panel rimming the lower portion of the Great Seal in the middle of the badge contained the words "Goddard Space Fight Center." Below the oak leaves was a third semi-circular panel with the word "Police" inscribed and beneath that, a fourth panel bearing the initials "U.S." (*See* Badge, Appendix A hereto). Because Officer Zielinski regularly engaged in police work at or around Goddard, he knew that NASA had a security guard force but no police force (Roe eventually identified himself as a NASA security guard), knew the badge Roe displayed was a fake, and, knowing that NASA security guards had no permission to carry firearms on the Parkway, arrested Roe. Roe was thereafter indicted on charges of impersonating an officer or employee of the United States in violation of 18 U.S.C. § 912 and possession of a false badge in violation of 18 U.S.C. § 701.

The Government's evidence at trial showed that Roe possessed the badge previously described (which Roe himself had designed and ordered), but the Government's witnesses also testified that while there are privately-retained security guards, there is no police force at Goddard, hence no police force badges as such. There are badges, however, that NASA issues to its security guards, which may be gold or silver (one of which Roe presumably had), but none say "Police" and none bear the Great Seal of the United States, the American flag, or oak leaves. Moreover, in the

middle (the so-called "meatball") of NASA's badges is the official NASA logo depicting a planet, stars, a wing or chevron and an orbit. The NASA security guard badges have an eagle with spread wings at the crest, a semi-circular panel immediately below bearing the word "Guard" or "Sergeant," and a fully circular panel directly below bearing the words "Goddard Space Flight Center." At the base of the badge is a panel containing a number, e.g., "117." (*See* Badges, Appendices B and C).

II.

Roe argues that he did not possess a "colorable imitation" of an official NASA badge, however official-looking the badge he did have may have been. The Government submits that the statute makes it unlawful to possess a counterfeit government badge that looks official and is intended to deceive.

III.

The standard for ruling on a motion for judgment of acquittal is whether substantial evidence exists which, taken in the light most favorable to the Government, would warrant a jury finding that the defendant is guilty beyond a reasonable doubt. Fed. R. Crim. P. 29(a); *United States v. MacCloskey*, 682 F.2d 468, 473 (4th Cir. 1982). The Court applies that standard to Count II.

IV.

18 U.S.C. § 701 provides that:

Whoever manufactures, sells, or possesses any badge, identification card, or other insignia, of the design prescribed by the head of any department or agency of the United States for use by any officer or employee thereof, or any colorable imitation thereof, or photographs, prints, or in any other manner makes or executes any engraving, photograph, print, or impression in the likeness of any such badge, identification card, or other insignia, or any colorable imitation thereof, except as authorized under regulations

made pursuant to law, shall be fined under this title or imprisoned not more than six months, or both.

"Colorable imitation" is not defined in § 701, and neither party has proffered any legislative history as to Congressional intent regarding the meaning of this term. Section 701 is based on 72 Pub. L. No. 206 (June 29, 1932), which states that the purpose of the Act is to "prohibit the misuse of official insignia," and 76 Pub. L. No. 82 (May 22, 1939), which similarly "prohibit[s] reproductions of official badges, identification cards, and other insignia." While the Tenth Circuit in *United States v. Goeltz*, 513 F.2d 193, 197 (10th Cir. 1975), has stated that the "enactment of § 701 was intended to protect the public against the use of a recognizable assertion of authority with intent to deceive," it said nothing about official-looking badges that might deceive but which do not otherwise resemble actual official badges.

The plain meaning rule, so favored by at least some members of the Supreme Court,[1] is of little help in this case. Indeed, the rule of lenity, the touchstone of which is statutory ambiguity, seems far more relevant. *See United States v. Santos*, 128 S. Ct. 2020, 2025 (2008) ("The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendant subjected to them.")

At least one court has construed § 701 as requiring an element of substantial likeness. In *United States v. Frakash*, 952 F. Supp. 696, 699 (D. Colo. 1996), the court suggested that mere use of a card held out to be government-issued identification was insufficient to satisfy the "colorable imitation" element of § 701. In that case, defendant presented a card that a witness described as a government identification card issued by the United States Geological Survey

---

[1] *See e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2514-15 (2007) (Scalia, J., concurring).

(USGS). The witness was not specific about all information contained on the card, other than that it indicated that defendant was a USGS employee. The court expressed doubt as to the sufficiency of the evidence presented and found the defendant not guilty of the charge brought under § 701.

Absent a statutory definition of "colorable imitation," the Court looks to the use of this term in other legal contexts. Black's Law Dictionary refers to "colorable imitation" as a creature of trademark law and defines it as "any mark, whether or not created with an intent to deceive, whose resemblance to a registered mark is likely to cause confusion or mistake." Black's Law Dictionary (8th ed. 2004). While there is no case in the Fourth Circuit defining "colorable imitation" in the context of § 701, the court has construed "colorable imitation" in the context of trademark law as requiring two objects to be "almost identical" in visual appearance with a "likeness so striking" as to cause confusion in identifying which is the true object. *See Communications Sattellite Corp. v. Comcet, Inc.*, 429 F.2d 1245, 1249 (4th Cir. 1970); *see also Synergistic International, LLC v. Korman*, 470 F.3d 162, 171 (4th Cir. 2006) (in assessing the "likelihood of confusion" element in a trademark dispute, the court considers several factors, including the "similarity of the two marks" and "the strength or distinctiveness of the [contested] mark").[2]

---

[2]Under the principle of ejusdem generis, the canon of statutory construction holding that when a general word or phrase follows a list of specific things, the general phrase will be interpreted to include only things of the same type as those things listed, "colorable imitation" would have to be interpreted to mean similar to the other prohibited items in the statute. *See* Black's Law Dictionary (8th Ed. 2004); *see also United States v. Ryan-Webster*, 353 F.3d 353, 365 (4th Cir. 2003). Section 701 prohibits possession of any badge bearing the design prescribed by a government department or agency or otherwise uses any "engraving, photograph, print, or impression in the likeness of any such badge, identification card, or other insignia, or any colorable imitation thereof." Accordingly, "colorable imitation" would seem to require a

In the present case, the Government argues that Roe's use of an official-looking badge as an assertion of authority intended to deceive as to his status as a federal police officer suffices to satisfy the "colorable imitation" provision of § 701. The Court rejects this notion. Roe's alleged assertion of authority through possession of the false federal badge may be evidence of false personation of a federal officer as charged in Count One of the Superseding Indictment. But it is no federal crime, given the rule of lenity, merely to possess an official-looking badge that is not substantially identical to a truly official badge, regardless of the deceit that might ensue.[3]

V.

For these reasons, Roe's Motion for Judgment of Acquittal as to Count Two of the Superseding Indictment is **GRANTED**.

A separate Order accompanies this opinion.

_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

**August 6, 2008**

---

substantial likeness to a government-issued badge.

[3] On a simpler level, one might also ponder how it is possible to have a "colorable imitation" of a badge, in this case a NASA "police" badge, that does not exist.